OPINION
Plaintiff-appellant Industrial Recycling Services, Inc.; James R. Kandel, Trustee; and Harvey Roth, appeal the September 25, 2001 Judgment Entry of the Stark County Court of Common Pleas, which found against them and in favor of defendants-appellees William S. Rudner; W. S. Rudner, CPA Associates, Inc.; and Specter Saulino, LLC.
 STATEMENT OF THE CASE AND FACTS
On January 28, 2000, appellants filed a complaint in the Stark County Court of Common Pleas alleging appellees were liable for professional negligence in their performance of accounting duties.
Industrial Recycling was an industrial metal scrap dealer/broker located in Canton, Ohio. In the course of its business, appellant bought and sold scrap metals including copper. At trial, a central issue revolved around whether appellants had engaged in "speculation" of copper futures in the commodity market or whether appellants had engaged in a process called "hedging." This was important because appellant alleged appellees, as their accountants, failed to properly recognize the copper future buy/sell activity, failed to properly account for such activity, and failed, therefore, to properly advise appellants of Industrial Recycling's financial status. Appellants maintained appellees breached their standard of care relative to their oversight of the "hedge" accounting.
To establish a defense, appellees retained a commodities trading expert, John Glase, to review appellants' physical transactions and the corresponding future contracts purchased and sold by appellants during the period of August, 1997 to February, 1998. At deposition and at trial, Mr. Glase testified the evidence demonstrated appellants had purchased large quantities of scrap copper in the COMEX future market baring no relationship to its physical contracts for the purchase or sale of copper. In other words, Mr. Glase opined appellants had engaged in speculation in the metals future market rather then hedging. In Mr. Glace's opinion, the practice of speculation exposed appellants to the price fluctuation of a volatile copper market. When the price of copper collapsed, Industrial Recycling sustained a huge loss as a direct result of their speculation.
After hearing all the evidence, a jury found in favor of appellees and against appellants. In a September 25, 2001 Judgment Entry, the trial court entered judgment in favor of appellees. On October 11, 2001, appellants filed a motion for new trial. On October 25, 2001, appellants filed their notice of appeal to this Court.
In a November 8, 2001 Judgment Entry, the trial court issued an order staying the action with regard to appellants' motion for a new trial or for judgment notwithstanding the verdict until such time as this Court had ruled on the appeal.
On June 13, 2002, appellants filed a motion to supplement the record on appeal. Attached to this motion was a document marked as Appendix 7, which appellants claim Mr. Glase used at trial. On June 19, 2002, this Court granted appellants' motion. However, on June 26, 2002, appellees filed a motion for reconsideration of our decision to grant appellants' motion to supplement the record. In their motion, appellants noted our decision was made before they could file a timely response. Further, on June 26, 2002, appellees filed a motion to strike appellants' reply brief stating the reply brief impermissibly raised a new assignment of error. On July 8, 2002, appellants filed a motion for extension of time in which to file their response to appellees' motion to strike the reply brief.
Appellants appeal from the September 25, 2002 Judgment Entry and assign the following errors for our review:
 "I. THE COURT ERRED, TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS, WHEN IT PERMITTED MR. JOHN GLASE TO OPINE AS TO DOCUMENTS PREPARED BY HIM AND NOT PROVIDED IN DISCOVERY.
 "II. THE TRIAL COURT ERRED, TO THE PREJUDICE OF PLAINTIFFS, WHEN IT REFUSED TO GRANT THEIR MOTION FOR NEW TRIAL OR FOR JUDGMENT NOTWITHSTANDING VERDICT."
 I.
In appellants' first assignment of error, they maintain the trial court erred in permitting Mr. Glase to use a Powerpoint presentation when such presentation was not presented in discovery. Because they were unable to review these documents before trial, appellants argue they were unable to effectively cross-examine Mr. Glace. We disagree.The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v.Adams (1980), 62 Ohio St.2d 151, 157.
This result is in accord with the general rule that an appellate court will not consider any error which the party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been corrected or avoided by the trial court. Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207.
At the outset we note two important facts. The Powerpoint presentation was never admitted into evidence, but was only used by Mr. Glase as a visual aid to his testimony. Further, while appellants did present an oral motion in limine on this issue, appellants did not object to the introduction or use of said exhibits immediately preceeding, during, or after the presentation and use of said exhibits during Mr. Glase testimony.
The only objection lodged by appellants took place well in advance of Mr. Glase's trial testimony. At that time, the following exchange took place on the record:
 "MR. FREEMAN: Yes. Your Honor, I was given a series of documents, uh, display documents that Mr. Glase apparently is going to use in his testimony if we get to it this afternoon. My guess is we won't even get to it, but I object to it.
 "Mr. Glase, as you may recall, is the expert who was identified to us at the last minute and was the subject of the last pretrial. I asked I had to do two depositions of him, and at Your Honor's instruction we had to get documents — you ordered that Mr. Witkowski produce documents for me prior to those depositions. This was not part of those documents. It's some sort of workup sheet, some sort of display. Mr. Glase is going to testify to it. He's an expert. He's not a party. Never was employed by a party. And, uh, you know, one of two things, either 1) they should stay out or 2) 1 should be able to depose him.
 "MR. WITKOWSKI: Your Honor, it's just a compilation of evidence that — the brokerage statements. What it is is the comparison of buy/sells taken from the broker's statement and taken from the daily position statements which Mr. Jurkiewicz has testified about. They've been — they were produced earlier and in handwritten form. Mr. Glase has put them onto a PowerPoint presentation so that they can be shown to the Jury. It's information that Mr. Freeman's had. It is — they're simply cleaned up for presentation to the jury.
 "MR. FREEMAN: I'm not arguing that it's not information somewhere in — contained in — you know, from various sources; I think the term is concatenated. You know, it may have been gathered from a number of different sources, but I've never seen these documents before today, and so I should be able to do one of two things.
"THE COURT: Well —
 "MR. WITKOWSKI: They're not in evidence, Your Honor. We're not interested in introducing them, they're summaries that he's prepared of, of evidence, of information that's come from Industrial Recycling's files. It's just demonstrative evidence.
 "THE COURT: Your objection's overruled. He will be allowed to — as long as it's a compilation that he has prepared of, of information that was contained in other documents available to Mr. Freeman.
"MR. WITKOWSKI: It has, Your Honor.
 "THE COURT: That it isn't new information coming in but a summary to assist in his presentation.
"MR. WITKOWSKI: That's what it is, Your Honor.
"MR. FREEMAN: Okay. Thank you." Tr. At 170-173.
In their brief to this court, appellants maintain they were unable to question Mr. Glase on the assumptions he used to prepare these displays for the jury because they were unable to review them before trial. We disagree with appellants' contention.
We have reviewed the trial testimony of Mr. Glase. As noted above, appellants did not object to Mr. Glase's use of the charts, graphs, and summaries in a Powerpoint presentation during Mr. Glase's testimony. Further, we note appellants' trial counsel engaged in an extensive cross-examination of Mr. Glase. In the cross-examination, trial counsel asked Mr. Glase to identify the underlying documents from which he drew the data to create the summaries, charts and graphs contained in this presentation. In fact, at one point during the cross-examination, appellants' trial counsel seemed to demonstrate Mr. Glase's figures could be incorrect based upon the underlying documents Mr. Glase testified he used to create the presentation.
Finally, we note this Powerpoint presentation was not admitted into evidence. Because the presentation is not part of our record, we are unable to review its contents and compare it to information provided in discovery. This fact, in and of itself, precludes appellants from demonstrating prejudice on this record.
Notwithstanding this fact, we would find no error in the trial court's decision to permit the use of the Powerpoint presentation. Appellants did not timely object to the introduction of the presentation and did not move to strike said presentation at the close of Mr. Glase's testimony. Further, when appellants' trial counsel did object, well in advance of Mr. Glase's testimony, appellant's trial counsel conceded the display would not be introduced into evidence and was taken from information contained from a number of different sources. Appellants' only argument appears to be he was unduly prejudiced by the presentation of the Powerpoint display used as an aid in Mr. Glase's testimony because without an opportunity to view the display before trial, he was unable to conduct a thorough and complete cross-examination. We find this contention to be without merit.
Appellants' first assignment of error is overruled.[1]
 II.
In appellants' second assignment of error, they maintain the trial court erred in refusing to grant their motion for a new trial or for a judgment notwithstanding the verdict. We disagree.
As noted above, the trial court stayed its decision on appellants' motion until this Court rendered its opinion on this appeal. Because the trial court has made no determination on these issues, appellants' argument is premature.
The September 25, 2001 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
By: HOFFMAN, P.J. GWIN, J. and WISE, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the September 25, 2001 Judgment Entry of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] Within appellants' first assignment of error, they make an additional argument with regard to the trial court's decision to forbid the testimony of Mr. Gasoyne as a rebuttal witness to Mr. Glase. Because this error was not separately assigned, we do not address it. See App.R. 16.